UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X

SHUAYB GREENAWAY, SHARON KNIGHT, &
AVERY KNIGHT,

                           *Plaintiffs,*

Docket No.:  CV-11-02024
(LDH) (AKT)

*- against -*

COUNTY OF NASSAU AND NASSAU COUNTY
POLICE OFFICERS SGT. VINCENT PAPA, in his
individual and official capacities, P.O. RONALD
SCHMITT, in his individual and official capacities, P.O.
CLARENCE HUDSON, in his individual and official
capacities, and P.O. WILLIAM STIO, in his individual
and official capacities, INCORPORATED VILLAGE
OF HEMPSTEAD AND VILLAGE OF HEMPSTEAD
POLICE OFFICERS P.O. FRANE REDO, in his
individual and official capacities, AND P.O. WALTER
OHR, in his individual and official capacities,

                           *Defendants.*

----------------------------------------------------------------------X

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITIONTO
DEFENDANTS COUNTY OF NASSAU's, SERGEANT VINCENT PAPA's,
POLICE OFFICERS RONALD SCHMITT's, CLARENCE HUDSON's, and
WILLIAM STIO's MOTION PURSUANT TO RULES 50 and 59 of
THE FEDERAL RULES OF CIVIL PROCEDURE

LAW OFFICES OF
FREDERICK K. BREWINGTON
*Attorneys for Plaintiffs*
556 Peninsula Boulevard
Hempstead, New York 11550
(516) 489-6959

SCOTT A. KORENBAUM, ESQ.
*Attorneys for Plaintiffs*
111 Park Place Suite 914
New York, New York 10007
(212) 587-0018

*Of Counsel:*   *FREDERICK K. BREWINGTON*
               *SCOTT A. KORENBAUM*

## TABLE OF CONTENTS

**PAGE NO.**

TABLE OF AUTHORITIES ................................................... iv

PRELIMINARY STATEMENT .................................................. 1

STATEMENT OF FACTS ...................................................... 1

ARGUMENT ............................................................... 2

POINT I

AMPLE EVIDENCE SUPPORTED THE JURY'S VERDICT THAT THE
COUNTY DEFENDANTS SEIZED GREENAWAY WITHOUT PROBABLE
CAUSE ............................................................. 2

   A.    The Standards Governing Defendants' Motions............................ 2

   B.    The County Defendants Did Not Preserve Their Argument That Probable Cause
       Was Lacking For Greenaway's Seizure ............................... 3

   C.    Ample Evidence Existed for the Jury to Conclude that the County Defendants
       Unlawfully Seized Greenaway ..................................... 5

   D.    The County Defendants Are Not Entitled To Qualified Immunity............ 7

POINT II

AMPLE EVIDENCE SUPPORTED THE JURY'S VERDICT THAT THE
COUNTY DEFENDANTS USED EXCESSIVE FORCE WHEN SEIZING
GREENAWAY ....................................................... 10

   A.    The County Defendants Have Waived Their Judgment As A Matter Of Law
       Argument. ...................................................... 10

   B.    The County Defendants Utilized Excessive Force By Tasing Greenaway Four
       Times Without Any Legitimate Purpose . ............................. 11

C.      Hudson and Stio Are Not Entitled To Qualified Immunity Because The Jury
        Obviously Found That Greenaway Never Posed Any Threat To The Officers . . 12

POINT III

        THE JURY HAD SUFFICIENT EVIDENCE TO FIND PAPA AND SCHMITT
        LIABLE FOR FAILING TO STOP THE EXCESSIVE USE OF FORCE . . . . . . . . . . . 13

POINT IV

        PLAINTIFFS INTRODUCED AMPLE EVIDENCE TO SUPPORT THE
        JURY'S VERDICT OF UNLAWFUL ENTRY/TRESPASS BECAUSE
        PLAINTIFFS REPEATEDLY INSISTED THAT THE COUNTY
        DEFENDANTS LEAVE 221 AMHERST STREET, AND GREENAWAY
        WAS CALM AT ALL TIMES BEFORE BEING TASED . . . . . . . . . . . . . . . . . . . . . . 14

POINT V

        THE COURT SHOULD LEAVE INTACT THE JURY'S AWARD OF
        PUNITIVE DAMAGES AGAINST HUDSON AND STIO BECAUSE, AMONG
        OTHER THINGS, THEY REPEATEDLY TASED GREENAWAY WITHOUT
        ANY BASIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

POINT VI

        THE COUNTY DEFENDANTS' MOTION FOR A NEW TRIAL SHOULD BE
        DENIED SAVE FOR A MODEST REMITTITUR REGARDING THE JURY'S
        EXCESSIVE FORCE AND FAILURE TO INTERVENE AWARDS . . . . . . . . . . . . . 17

A.      The Jury's Verdict Is Not Against The Weight Of The Evidence.  . . . . . . . . . . 17

B.      The Standards Governing Remittitur.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

C.      The Jury's Excessive Force Award. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

D.      The Jury's Award of $100,000 in Punitive Damages is Reasonable.  . . . . . . . . . 2

        1.      Reprehensibility.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

        2.      The Ratio of Punitive Damages to Compensatory Damages . . . . . . . . . . 2

        3.      Comparable Civil or Criminal Penalties. . . . . . . . . . . . . . . . . . . . . . . . . 26

        4.      Other Case Law  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

E.      The Jury's Award of $100,000 For False Arrest Is Reasonable.  . . . . . . . . . . . . 28

F.      The Jury's Combined $60,000 Award For Unlawful Entry Is Reasonable. . . . . . 29

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## TABLE OF CONTENTS

**CASE NAME**                                                              **PAGE NO.**

*Alla v. Verkay,*
  979 F. Supp.2d 349 (E.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 25, 27, 28

*Amnesty America v. Town of W. Hartford,*
  361 F.3d 113 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Askins v. Doe,*
  727 F.3d 248 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Bmw of N. Am. v. Gore,*
  517 U.S. at 575. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

*Bender v. City of New York,*
  78 F.3d 787(2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Blissett v. Coughlin,*
  66 F.3d 531 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Bryan v. McPherson,*
  630 F.3d 805 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Cook v. Sheldon,*
  41 F.3d 73 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*County of Los Angeles v. Mendez,*
  137 S. Ct. 1539 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*DLC Management Corp. v. Cohen,*
  163 F.3d 124 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Fabri v. United Technologies Intern., Inc.,*
  387 F.3d 109 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Farrior v. Waterford Bd. of Educ.,*
  277 F.3d 633 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Galdieri-Ambrosini v. Nat'l Realty & Development Corp.,*
  136 F.3d 276 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

-iv-

*Garcia v. Dutchess Cnty.*,
43 F. Supp.3d 281 (S.D.N.Y. 2014), *aff'd in part, dsm'd in relevant part*,
603 Fed. Appx. 61    (2d Cir. May 13, 2015) ................................ 12, 13, 21

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982) ......................................................... 9

*Hope v. Pelzer*,
536 U.S. 730   (2002) ........................................................ 9

*Ismail v. Cohen*,
899 F.2d 183 (2d Cir. 1990) ............................................. 19, 20

*Jackson v. Town of Hempstead*, 98 CV 5635,
2002 U.S. Dist. LEXIS 2398   (E.D.N.Y. Feb. 4, 2002). ........................... 19

*Jenkins v. City of New York*,
478 F.3d 76 (2d Cir. 2007) .................................................. 9

*Jennings v. Fuller*, No. 13-13308,
2017 U.S. Dist. LEXIS 77945 (E.D. Mich. May 23, 2017) ......................... 9, 23

*Jocks v. Tavernier*,
316 F.3d 128   (2d Cir. 2003) ................................................. 7

*Julia Props., LLC v Levy*,
137 A.D.3d 1224 (2d Dep't 2016) ............................................ 29

*Kerman v. City of New York*,
261 F.3d 229 (2d Cir. 2001) ............................................ 6, 9, 10

*Komlosi v. Fudenberg*, 88 Civ. 1792,
2000 U.S. Dist. LEXIS 4237 (S.D.N.Y. Mar. 31, 2000), ........................... 27

*Lee v. Edwards*,
101 F.3d 805 (2d Cir. 1996) .......................................... 24, 25, 27

*Lightfoot v. Union Carbide Corp.*,
110 F.3d 898   (2d Cir. 1997). .............................................. 19

*Lore v. City of Syracuse*,
670 F.3d 127   (2d Cir. 2012). ............................................. 3, 4

*Martinez v. Port Auth.*, 01 Civ. 721,
   2005 U.S. Dist. LEXIS 19141 (S.D.N.Y. Sept. 2, 2005), *aff'd*, 445 F.3d 158 (2d Cir. 2006) . 20

*Martinez v. Port Auth.*,
   445 F.3d 158  (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Mathie v. Fries*,
   121 F.3d 808 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Mattos v. Agarano*,
   661 F.3d 433  (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*McCardle v. Haddad*,
   131 F.3d 43 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8

*McFadden v. Sanchez*,
   710 F.2d 907 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Nimkoff v. Dollhausen*,
   751 F. Supp. 2d 455  (E.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Payne v. Jones*,
   711 F.3d 85 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Ramirez v. NYC Off-Track Betting Corp.*,
   1996 U.S. Dist. LEXIS 5715 (S.D.N.Y. Apr. 30, 1996) *aff'd in relevant part*, 112 F.3d 38
   (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Reeves v. Sanderson Plumbing Prods., Inc.,
   530 U.S. 133, 150-51 (2000)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Rucks v. City of New York*,
   96 F. Supp.3d 138 (S.D.N.Y. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Sagendorf-Teal v. County of Rensselaer*,
   100 F.3d 270, 275-76 (2d Cir. 1996); . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Thomas v. City of New York*, 09 Civ. 3162,
   2010 U.S. Dist. LEXIS 137166 (S.D.N.Y. Dec. 22, 2010) . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Thomas v. Kelly*,
   903 F. Supp. 2d 237  (S.D.N.Y. 2012), *vacated on other grounds*,
   293 F.R.D. 498 (S.D.N.Y. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 26, 27, 28

-vi-

*Tolbert v. Queens College,*
   242 F.3d 58, 70 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Toporoff Engineers, P.C. v. Fireman's Fund Ins. Co.,*
   371 F.3d 105 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Tracy v. Freshwater,*
   623 F.3d 90  (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Trademark Research Corp. v. Maxwell Online, Inc.,*
   995 F.2d 326 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Vodusek v. Bayliner Marine Corp.,*
   71 F.3d 148 (4th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Zellner v. Summerlin,*
   494 F.3d 344 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 12

## <u>STATUTES</u>

18 U.S.C. § 242 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

18 U.S.C. § 3571(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Fed. R. Civ. Pro 50(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Fed. R. Civ. Pro 50(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

N.Y. Penal Law § 70.00. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

N.Y. Penal Law § 70.00(2)(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Penal Law § 120.05 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

N.Y. Penal Law § 120.05(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

N.Y. Penal Law § 135.20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## PRELIMINARY STATEMENT

Plaintiffs Shuay'B Greenaway, Sharon Knight and Avery Knight submit this memorandum of law in opposition to the motion of defendants County of Nassau, Sergeant Vincent Papa, Police Officers Ronald Schmitt, Clarence Hudson, and William Stio (the "County defendants"), brought pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure, for judgment as a matter of law, a new trial, or a reduction of the jury's award of compensatory and punitive damages. Having presided over six days of trial, including jury selection and jury deliberations, we are confident the Court appreciates that ample evidence existed to support the jury's findings of liability and damages. In arguing to the contrary, the County defendants violate the cardinal principles governing this Court's review of the verdict because they view the evidence most favorably to them. To the extent that they ask the Court to assess credibility in their motion for a new trial, they present no compelling reason for the Court to do so. Moreover, most of their arguments are not preserved.

## STATEMENT OF FACTS

Because the Court presided over the trial, plaintiffs presume its familiarity with the proceedings. Where warranted, plaintiffs reference the relevant pages of the trial transcripts, which are annexed to the Declaration of Scott A. Korenbaum Submitted in Opposition to the County Defendants' Post-Trial Motions ("Korenbaum Dec."), dated August 14, 2017, to support their arguments.

## ARGUMENT

### POINT I

### AMPLE EVIDENCE SUPPORTED THE JURY'S VERDICT THAT THE COUNTY DEFENDANTS SEIZED GREENAWAY WITHOUT PROBABLE CAUSE

In moving to set aside the jury's finding that they unlawfully seized Greenaway, the County defendants rely upon their testimony to conclude that Greenaway presented a danger to himself and the defendants present inside of 221 Amherst Street on April 25, 2010. County Defendants' Memorandum of Law in Support of Motion for Judgment as a Matter of Law Pursuant to Fed. R. Civ. Proc. 50(b), or in the Alternative for a New Trial or Remittitur Pursuant to Fed. R. Civ. Proc. 59 ("Defs. Memo") at 18-20. This Court should reject their argument because it is not preserved, and otherwise is meritless.

#### A. The Standards Governing Defendants' Motions.

"In entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record." That review

> must draw all reasonable inferences in favor of the nonmoving party . . . Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. . . . That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses.

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000) (citations and quotations omitted). The Court cannot grant a motion for lack of sufficient evidence unless there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, []or . . . the evidence in favor of defendants so

overwhelming that reasonable and fair minded [persons] could not arrive at a verdict against [them]." *Toporoff Engineers, P.C. v. Fireman's Fund Ins. Co.*, 371 F.3d 105, 108 (2d Cir. 2004) (quotation marks and citations omitted). In reaching its verdict, the jury was free to select the evidence it chose to rely on. *See Lore v. City of Syracuse*, 670 F.3d 127, 150 (2d Cir. 2012).

### B. The County Defendants Did Not Preserve Their Argument That Probable Cause Was Lacking For Greenaway's Seizure

In moving pursuant to Fed. R. Civ. Proc. 50(a), the County Defendants joined in the arguments advanced by the Village defendants regarding their entitlement to qualified immunity. (Tr. 1030-31 ("I will make it simple judge, in that I join in the Village's application on the Rule 50 application in all respects and as to all charges, a reasonable jury could not find the facts according to the law. Just so it's on the record.").) The Village defendants never argued that probable cause was lacking for Greenaway's seizure. Instead, they argued that "plaintiffs' complaint [should be dismissed] in its entirety on the grounds of qualified immunity, that based upon the evidence that was elicited during the trial of the action of the Hempstead Police Officers were objectively reasonable under the circumstances" (Tr. 1017), and that there was no evidence "that the Village Officers took Greenaway into custody." (Tr. 1025.)

Rule 50 provides, in relevant part, that "[a] motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. Proc. 50(a)(2). Furthermore, "a posttrial motion for JMOL can properly be made only if, and to the extent that, such a motion specifying the same grounds was made prior to the submission of the case to the jury." *McCardle v. Haddad*, 131 F.3d 43, 51 (2d Cir. 1997) (quotations omitted); *Tolbert v. Queens College*, 242 F.3d 58, 70 (2d Cir. 2001).

The Village defendants, as relevant to the County defendants' motion, only argued that they were entitled to qualified immunity, which presumes an underlying constitutional deprivation. *See Askins v. Doe*, 727 F.3d 248, 253-54 (2d Cir. 2013). Moreover, the Village defendants, and, thus, the County defendants, never articulated any facts that supported their conclusion that "plaintiffs' complaint [should be dismissed] in its entirety on the grounds of qualified immunity, that based upon the evidence that was elicited during the trial of the action of the Hempstead Police Officers were objectively reasonable under the circumstances." (Tr. 1017.) In *Lore*, the Second Circuit reemphasized that Rule 50(a)(2)'s specificity requirement was mandatory. 670 F.3d at 152-53 ("[T]he specificity requirement is obligatory. . . . A Rule 50(a) motion requesting judgment as a matter of law on one ground but omitting another is insufficient to preserve a JMOL argument based on the latter.") (citations and quotations omitted).)

The County defendants never argued in support of their Rule 50(a) motion that probable cause existed to seize Greenaway because he "was fighting against Hudson, Papa, Stio and Schmitt" after the first tasing." They do now. Defs. Memo at 18. Yet, the purpose behind Rule 50(a)'s requirement is to provide the non-movant with the opportunity to cure any alleged defects in the sufficiency of proof. *Galdieri-Ambrosini v. Nat'l Realty & Development Corp.*, 136 F.3d 276, 286-87 (2d Cir. 1998). Accordingly, the County Defendants have waived their right to seek judgment as a matter of law. *Lore*, *supra*. *See Tolbert*, 242 F.3d at 77 ("A motion that identifies one element of a claim is insufficient to permit the district court to grant JMOL for lack of proof of some other, unspecified, element, and is insufficient to permit appellate review of the sufficiency of the evidence as to the unspecified element. . . .") (citations omitted).)

C.     **Ample Evidence Existed for the Jury to Conclude that the County Defendants Unlawfully Seized Greenaway**

The County Defendants' argument that probable cause existed to seize Greenaway also fails on the merits. The County Defendants do not take issue with the Court's instructions to the jury. Rather, they contend that, based upon the respective officers' testimony, "that Greenaway presented a danger to himself and others. . . ." Defs. Memo at 18. In pressing their arguments, they completely ignore plaintiffs' testimony.

The County Defendants argue, as they did at trial (Tr. 989-95), that probable cause existed to involuntarily confine Greenaway pursuant to Mental Hygiene Law § 9.41. The Court instructed the jury without objection,

> Probable cause in this context means that the police officers who involuntarily confine a person must collectively have information at the time of the confinement which would lead a reasonable officer under the circumstances to conclude both that the person appears to be mentally ill and is conducting himself in a manner which is likely to result in serious harm to himself or others.
>
> Now, New York law defines "likely to result in serious harm" as, A, a substantial risk of physical harm to the person as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that the person is dangerous to himself; or, B, a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm.

(Tr. 1055-56.) *See Thomas v. City of New York*, 09 Civ. 3162, 2010 U.S. Dist. LEXIS 137166, *21 (S.D.N.Y. Dec. 22, 2010) ("Under the statute, there is a likelihood of serious harm if there is 'a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm.'")

Plaintiffs' testimony permitted the jury to conclude easily that Greenaway did not pose any risk to himself or any defendant. Greenaway testified that when Reado and then Ohr first appeared

at 221 Amherst St. he was painting the bathroom on the second floor. Greenaway calmly spoke with Reado for approximately 15-25 minutes without any signs of violence. (Tr. 160-62.) He asked Reado if he was under arrest. Reado responded "no." Greenaway then asked Reado if he had any tickets to issue him. Again, Reado responded "no." Greenaway showed Reado his driver's license to prove he lived there. When Reado persisted that he go to the hospital with him, Greenaway told him that he did not need to go to the hospital, that he was simply painting the bathroom of his new place, and that he was fine. This back and forth went on for some time. When Reado persisted, Greenaway told him that "if you're not going to arrest me and you're not going to give me a ticket, you're not going to give me a summons, I need you to leave." (Tr. 869-71.) After a brief continuation of a similar nature, Reado "stepp[ed] out of the way -- he was in the threshold of the door and I was in the bathroom and I just remember him looking, looking back because, and I remember getting shot by a white guy." (Tr. 872.)[1] This evidence provided the jury with more than sufficient evidence to find that probable cause was lacking for Greenaway's involuntarily commitment. *See Kerman v. City of New York*, 261 F.3d 229, 240-41 (2d Cir. 2001); *see also Thomas*, 2010 U.S. Dist. LEXIS 137166 at *25 ("if a jury believed Thomas's testimony, as corroborated by Marrow and Sookraj, the officers could not have reasonably believed that Thomas was emotionally disturbed because Thomas was not yelling, arguing, or cursing and was not otherwise acting in a manner that suggested he was emotionally disturbed under Mental Hygiene Law § 9.41.").

The County Defendants ignore this evidence, and focus on the fact that "Greenaway was fighting against Hudson, Papa, Stio and Schmitt" after the first tasing. Defs. Memo at 18. Again,

---

[1] The County Defendants' argument also ignores that Hudson and Stio acknowledged that Greenaway posed no threat to them at the moment Hudson first tased him. (Tr. 316-17; 697.)

there was no reason for the jurors to credit this aspect of the defendants' testimony, or any other.[2]

The jury accepted Greenaway's testimony that after Hudson tased him he was terrified, and that he

did not struggle with the County Defendants. (Tr. 874-75.) Similarly, Mrs. Knight's testimony, that

she heard her son screaming for his life after she heard the tasers strike (Tr. 53-54), permitted the

jury to conclude that Greenaway was not resisting the County defendants' unjustified use of force.

Finally, having unconstitutionally seized Greenaway in the first instance and recognizing the effects

of Hudson's actions, the County defendants cannot credibly claim that Greenaway acted in a manner

that posed a substantial risk of physical harm to the defendant officers. *Jocks v. Tavernier*, 316 F.3d

128, 135 (2d Cir. 2003) ("a police officer's awareness of the facts supporting a defense can eliminate

probable cause").

**D.** **The County Defendants Are Not Entitled To Qualified Immunity.**

The County defendants also allege that they are entitled to qualified immunity. Defs. Memo

at 20-23. Like their Rule 50(a) motion, they do not present any evidence in support of their

argument. Instead, they argue that "[b]ased on their observations of Greenaway's behavior, the

knowledge that he had a history of mental illness and was not taking his medications, and based on

the officers' training in dealing with mental aided, it was reasonable for them to believe that

Greenaway presented a danger to himself and others." Defs. Memo at 22.

Once again, the County defendants have not preserved their argument. In *Zellner v.

Summerlin*, 494 F.3d 344 (2d Cir. 2007), the Second Circuit made clear that a defendant must

establish his or her entitlement to qualified immunity:

> [B]ecause qualified immunity is an affirmative defense, it is
> incumbent upon the defendant to plead, and adequately develop, a

---

[2] We discuss in Point VI.A. the officers' lack of credibility.

> qualified immunity defense during pretrial proceedings so that the
> trial court can determine . . . which facts material to the qualified
> immunity defense must be presented to the jury to determine its
> applicability once the case has gone to trial. . . . To the extent that a
> particular finding of fact is essential to a determination by the court
> that the defendant is entitled to qualified immunity, it is the
> responsibility of the defendant to request that the jury be asked the
> pertinent question. . . . If the defendant does not make such a request,
> he is not entitled to have the court, in lieu of the jury, make the
> needed factual finding.

*Id.* at 368 (citations and quotations omitted). Simply stating in conclusory fashion that a party is

entitled to qualified immunity, as the County defendants did at trial, is inadequate to satisfy Rule

50(a)'s specificity requirement. *McCardle*, 131 F.3d at 52.

    *McCardle* addressed a virtually identical argument as the County defendants present here:

"following the close of the defense case, Haddad's counsel made what he called a 'motion for

judgment of acquittal' (Tr. 158), and proceeded to argue that 'on the issue of illegal stop here, that

the evidence compels a ruling for the Defendant either on the actual case or on the issue of qualified

immunity, which is ultimately to be decided by the Court unless there are disputed issues to be

resolved by the jury.'" *Id.* at 52. In finding that defendant had waived his right to seek qualified

immunity, the *McCardle* Court held in language applicable here, "[a]lthough Haddad moved after

trial for JMOL dismissing McCardle's claim of unlawful search and briefly mentioned qualified

immunity as one ground for that relief, that motion was improper to the extent that it sought to

invoke qualified immunity because no motion for JMOL on that basis had been directed to the claim

of unlawful search at trial. Accordingly, Haddad's defense of qualified immunity with respect to

the claim of unlawful search had plainly been waived. *McCardle*, 131 F.3d at 52. *See also Blissett

v. Coughlin*, 66 F.3d 531, 539 (2d Cir. 1995) ("Appellants never articulated a qualified immunity

defense distinct from their contention — the heart of their defense throughout these proceedings —

that no constitutional violation occurred. . . .  We find no error in the district court's ruling that the qualified immunity defense had been waived.")

The County defendants' motion also fails on the merits.  Qualified immunity is intended to ensure that before an official is subjected to a lawsuit, that the official is on notice that the alleged conduct is unlawful.  *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002).  Thus, if the law is "clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct."  *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982); *accord Kerman v. City of New York*, 261 F.3d 229, 237 (2d Cir. 2001) (qualified immunity should be denied "where it is sufficiently clear that a reasonable official would understand that what he is doing violates the law").  Here, it was clearly established as of April 25, 2010, that Greenaway had the right not to be seized without probable cause.  *Cook v. Sheldon*, 41 F.3d 73, 78 (2d Cir. 1994).  *See Kerman*, *supra*.

Where an officer asserts the defense of qualified immunity in a false arrest case, the inquiry is "whether it was objectively reasonable for the officer to conclude that probable cause existed."  *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007).  As the *Jenkins* Court explained,

> An officer's determination is objectively reasonable if there was "arguable" probable cause at the time of arrest -- that is, if officers of reasonable competence could disagree on whether the probable cause test was met. . . .  "Arguable" probable cause should not be misunderstood to mean "almost" probable cause. . . .  There should be no doubt that probable cause remains the relevant standard. If officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause, the fact that it came close does not immunize the officer.

*Jenkins*, 478 F.3d at 87.

As detailed above, the jury found that nothing Greenaway said or did provided the County defendants with any reason to believe that he was a danger to himself or to the officers inside of 221 Amherst Street.  This is the start and end of the discussion.  *Kerman*, 261 F.3d at 240-41.  And, plaintiffs would be remiss if they did not note the irony in the County defendants' reliance on their training in dealing with the mentally aided.  As the Court noted, "[n]ot a single officer came close to articulating a standard that approached that which is consistent with the mental hygiene law.  So if they are being instructed, as at least one officer testified, that you can involuntarily confine someone because they did not take their medication, which is what an officer testified to, isn't that at least some evidence of a failure to train?"  (Tr. 1020-21.)

### POINT II

**AMPLE EVIDENCE SUPPORTED THE JURY'S VERDICT THAT THE COUNTY DEFENDANTS USED EXCESSIVE FORCE WHEN SEIZING GREENAWAY**

The County defendants contend that they are entitled to judgment as a matter of law regarding the jury's findings of excessive force because "it was objectively reasonable for [them] to use the Taser, as the least amount of force required to take Greenaway into custody."  Defs. Memo at 25.  The County defendants have also waived this argument.  It is also meritless.

**A.     The County Defendants Have Waived Their Judgment As A Matter Of Law Argument**

Greenaway demonstrates in Point I(B), above, that the County defendants did not preserve their argument that their use of force was reasonable under the circumstances.  As such, they have waived their right to pursue it here.

**B.**     **The County Defendants Utilized Excessive Force By Tasing Greenaway Four Times Without Any Legitimate Purpose**

Regarding plaintiffs' excessive force claims, this Court correctly instructed the jury, without

objection,

> A law enforcement official may only employ the amount of force reasonably necessary under the circumstances. To determine whether a defendant's acts caused any plaintiff to suffer the loss of a constitutional right, you must determine whether the amount of force used was that which a reasonable officer would have employed under similar circumstances.
>
> In making this determination, you may take into account such factors as the severity of the circumstances, whether any plaintiff posed an immediate threat to the safety of a defendant or others, and whether any plaintiff actively resisted. However, you do not have to determine whether a defendant had less intrusive alternatives available, for a defendant need only to have acted within that range of conduct identified as reasonable. Not every push or shove by a police officer constitutes excessive force, even if it may later seem unnecessary in the peace and quiet of this courtroom. Minor scrapes and bumps or bruises potentially could occur, often unintended when taking a person into custody, and an officer cannot be held liable for every such incident.

(Tr. 1057.)  Against this backdrop, the County defendants' argument, that "[t]he use of the Taser

was used only as a last resort" (Defs. Memo at 25), necessarily fails.

Greenaway demonstrates above that the County defendants had no justification to seize him.

The jury found Greenaway's testimony credible that he was simply painting his bathroom at the time

Hudson initially tased him, and rejected the very arguments they press here. The County

defendants' arguments elide over this evidence. The jury could also find that Greenaway did not

subsequently resist their efforts to arrest him (Tr. 53-54, 874-75), and, quite significantly, that the

County defendants knew that Hudson's and Stio's repeated tasing of Greenaway may have caused

-11-

the very condition they claimed justified their use of force.[3]  Because the jury had every reason to

find that Hudson and Stio repeatedly tased Greenaway without any legitimate basis to do so, their

motion for judgment as a matter of law should be denied.  *Garcia v. Dutchess Cnty.*, 43 F. Supp.3d

281, 291-94 (S.D.N.Y. 2014), *aff'd in part, dsm'd in relevant part*, 603 Fed. Appx. 61 (2d Cir. May

13, 2015).  *See also Amnesty America v. Town of W. Hartford*, 361 F.3d 113, 124 (2d Cir. 2004)

("Because a reasonable jury could also find that the officers gratuitously inflicted pain in a manner

that was not a reasonable response to the circumstances, . . . the determination as to the objective

reasonableness of the force used must be made by a jury following a trial.")

C.  **Hudson and Stio Are Not Entitled To Qualified Immunity Because The Jury
Obviously Found That Greenaway Never Posed Any Threat To The Officers**

Relying on the same evidence to justify their use of force, the County defendants argue in

conclusory fashion that they are entitled to qualified immunity.  Defs. Memo at 25-27.  Greenaway

demonstrates in Points I(B) and I(D) above, that Hudson and Stio have waived this argument.  In

fact, the very evidence they use to support their claims, *i.e.*, "(1) Greenaway was struggling and

resisting, and (2) he was covered with the pain, making grabbing next to impossible[,]" Defs. Memo

at 25, were necessarily rejected by the jury.  If Hudson and Stio thought these facts, or others, were

relevant to this Court's qualified immunity analysis, they were required to have the jury answer

these questions through the use of special interrogatories.  *Zellner*, 474 F.3d at 368; *Rucks v. City

of New York*, 96 F. Supp.3d 138, 151 n. 5 (S.D.N.Y. 2015) (same).

Even if Hudson and Stio preserved their right to seek qualified immunity, their arguments

---

[3] In *County of Los Angeles v. Mendez*, 137 S. Ct. 1539 (2017), the Supreme Court found that an
earlier Fourth Amendment violation by different officers did not "transform a later, reasonable
use of force into an unreasonable seizure" by officers unaware of the earlier Fourth Amendment
violation.  *Mendez* is inapposite because Hudson and Stio knew about each other's conduct.

-12-

are meritless. Viewing the evidence in the light most favorable to Greenaway, his and his mother's testimony, as demonstrated above, establish that Hudson and Stio had no basis to deploy their tasers. Under these circumstances, no reasonable police officer could conclude that their use of force was lawful. *See Tracy v. Freshwater*, 623 F.3d 90, 98-99 & n.5 (2d Cir. 2010) (reversing grant of summary judgment where use of force is gratuitous and arrestee posed no risk); *Garcia*, 43 F. Supp.3d at 291-94. *See also Amnesty America*, 361 F.3d at 124 ("Because a reasonable jury could also find that the officers gratuitously inflicted pain in a manner that was not a reasonable response to the circumstances, . . . the determination as to the objective reasonableness of the force used must be made by a jury following a trial.")

## POINT III

### THE JURY HAD SUFFICIENT EVIDENCE TO FIND PAPA AND SCHMITT LIABLE FOR FAILING TO STOP THE EXCESSIVE USE OF FORCE

In a somewhat confusing argument, the County defendants posit that the Court should vacate the jury's award of liability (and thus damages) on the plaintiffs' failure to intervene claims. Regarding Greenaway, they claim that there was no underlying constitutional violation, which, if true, would support their argument. Plaintiffs demonstrate above that ample evidence supported the jury's verdict on excessive force and false imprisonment – and demonstrate below the same regarding the jury's verdict on their unlawful entry claim. Second, the County defendants argue that they cannot be held liable because they committed the underlying constitutional violations, and, as such, one cannot be liable for malfeasance and nonfeasance. Defs. Memo at 27-28.

This Court should reject all aspects of the County defendants' arguments because they are waived. As demonstrated above, the County defendants never articulated these arguments in their Rule 50(a) motion. Given the evidence they marshal in support of their current arguments, it is

particularly appropriate to find waiver given the lack of opportunity the plaintiffs had to address them during trial.

The County defendants' arguments also ignore that only Hudson and Stio were found liable for excessive force. Korenbaum Dec. at Exh. 1, p. 2. The jury readily concluded that Papa and Schmitt saw the unconstitutional use of force being applied by Hudson and Stio and stood silent. This is particularly so since Papa did not testify even though he was available to do so, which permitted the jury to infer that his testimony would have supported Greenaway's claims. *See Sagendorf-Teal v. County of Rensselaer*, 100 F.3d 270, 275-76 (2d Cir. 1996); *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995). As for Schmitt, the jury simply rejected his testimony, which it was permitted to do.

## POINT IV

**PLAINTIFFS INTRODUCED AMPLE EVIDENCE TO SUPPORT THE JURY'S VERDICT OF UNLAWFUL ENTRY/TRESPASS BECAUSE PLAINTIFFS REPEATEDLY INSISTED THAT THE COUNTY DEFENDANTS LEAVE 221 AMHERST STREET, AND GREENAWAY WAS CALM AT ALL TIMES BEFORE BEING TASED**

The County defendants argue that the jury's verdict finding them liable for unlawful entry and the state law analogue of trespass should be set aside because exigent circumstances required them to remain in the house. For the reasons discussed above, this Court should reject their argument because it is not preserved. Their counsel never uttered the words "exigent circumstances," and never marshaled any facts in support of any argument. (Tr. 1017, 1031-32.)

The County defendants' argument also fails on the merits. The Court instructed the jury, without objection from the County defendants, as follows,

> The Fourth Amendment and analogous state law guarantees individuals the right to be secure in their homes. Unless the person

-14-

> has consented to entry or there is an emergency or other exigent circumstances, officers need a warrant to enter or remain in a person's home to take a person into custody. The scope of consent is limited by its terms, and consent may be withdrawn. Withdrawal can only be accomplished by an unequivocal act or statement.
>
> It is not disputed that the Defendant officers entered Plaintiffs' home with the consent of Plaintiffs. . . . Plaintiffs maintain that they withdrew their consent for the officers to remain in their home. If you find that consent was withdrawn and the officers thereafter remained in Plaintiffs' home, then you must determine whether there was an emergency or other exigent circumstances that justified the officers' continued presence. Exigent circumstances exist, for example, where entry into or continued presence in a home is reasonably believed necessary to render emergency assistance to an injured occupant or to protect an occupant from imminent injury. To make this determination, you should consider whether the facts would lead a reasonable, experienced officer to believe that there was an urgent need to render aid or take action. . . .

(Tr. 1058-59.)

The County defendants admit, as they must, that they were told repeatedly told by Mr. and Mrs. Knight to leave their house. Defs. Memo at 30. They must also admit that Greenaway told Reado to leave the apartment (Tr. 871), and the jury heard from Reado that the Knights emphatically insisted for 15 minutes that that they wanted everyone to leave the home as soon as the County defendants entered the room. (Tr. 173-75, 182). While the County defendants now claim that their refusal to leave the house was justified "[g]iven the exigent circumstances presented by Greenaway's disturbed behavior, and knowing that they were dealing with a mentally ill person who was not taking his medications, and in view of Greenaway's presenting a danger to himself and others," Defs. Memo at 30, this argument does not view the evidence most favorably to the plaintiffs. As noted, the jury heard that, for upwards of 40 minutes, Greenaway was not a danger to himself or others. (Tr. 176.) Because the jury had ample evidence to support its verdict, the

-15-

County defendants' motion should be denied. *Nimkoff v. Dollhausen*, 751 F. Supp. 2d 455, 465-66

(E.D.N.Y. 2010) (denying defendants' motion for summary judgment where a view of the evidence

established that the plaintiff had withdrawn his consent to the officers' continued presence in the

home, and exigent circumstances were lacking).

### POINT V

**THE COURT SHOULD LEAVE INTACT THE JURY'S AWARD OF PUNITIVE DAMAGES AGAINST HUDSON AND STIO BECAUSE, AMONG OTHER THINGS, THEY REPEATEDLY TASED GREENAWAY WITHOUT ANY BASIS**

The County defendants argue that the Court should vacate the jury's award of punitive

damages as against Hudson and Stio because "no County Defendant violated any constitutional right

of plaintiff Greenaway, either through false arrest, excessive force, or failure to intervene." Defs.

Memo at 32. This is the sole argument the County defendants advance.

Hudson's and Stio's argument should be rejected for myriad reasons. Having failed to argue

at the close of the case that Greenaway did not make a sufficient showing to warrant punitive

damages, it is now waived. *Fabri v. United Technologies Intern., Inc.*, 387 F.3d 109, 125 (2d Cir.

2004); *Alla v. Verkay*, 979 F. Supp.2d 349, 372-73 (E.D.N.Y. 2013). Greenaway demonstrates

above that Hudson's and Stio's use of force was clearly excessive, that they unlawfully seized him,

and simply could have avoided the entire interaction if they had left the home. It is beyond cavil

that using gratuitous violence on a non-resisting person warrants the imposition of punitive damages.

*Alla*, 979 F. Supp.2d at 378; *Thomas v. Kelly*, 903 F. Supp. 2d 237, 267 (S.DN.Y. 2012), *vacated

on other grounds*, 293 F.R.D. 498 (S.D.N.Y. 2013).

-16-

**POINT VI**

**THE COUNTY DEFENDANTS' MOTION FOR A NEW
TRIAL SHOULD BE DENIED SAVE FOR A MODEST
REMITTITUR REGARDING THE JURY'S EXCESSIVE
FORCE AND FAILURE TO INTERVENE AWARDS**

The County defendants present a plethora of reasons why they believe the Court should

vacate the jury's verdict, or reduce its amount.  Plaintiffs agree that the jury's $7,500,000 award for

excessive force needs to be remitted.  They also agree that the failure to intervene awards need to

be vacated – but not the findings of liability – because they represent an impermissible double

recovery.  *Bender v. City of New York*, 78 F.3d 787, 793 (2d Cir. 1996).  The balance of the County

defendants' arguments, however, should be rejected.

**A.**     **The Jury's Verdict Is Not Against The Weight Of The Evidence.**

"A grant of a new trial on the ground that the verdict was against the weight of the evidence

is appropriate if 'the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage

of justice.'"  *Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 634-635 (2d Cir. 2002).  Unlike a

motion for judgment as a matter of law,

> a new trial may be granted even if there is substantial evidence
> supporting the jury's verdict. Moreover, a trial judge is free to weigh
> the evidence himself, and need not view it in the light most favorable
> to the verdict winner. . . .  A court considering a Rule 59 motion for
> a new trial must bear in mind,  however, that the court should only
> grant such a motion when the jury's verdict is egregious.  . . .
> Accordingly, a court should rarely disturb a jury's evaluation of a
> witness's credibility.

*DLC Management Corp. v. Cohen*, 163 F.3d 124, 133-134 (2d Cir. 1998) (citations and quotations

omitted).

In what may be described as a "please save us Your Honor" argument, the County

defendants claim that "each and every one of the jury's findings of liability . . . is against the clear

-17-

weight of the evidence. . . ." Defs. Memo at 34. They rehash the arguments in favor of their motion for judgment as a matter of law. *Id.* They ignore that the jury heard the County defendants – except Papa – contradict themselves, contradict the testimony of the Village defendants, and advance preposterous testimony in an effort to justify their unjustifiable actions.

The jury heard Reado admit that Greenaway was not violent before he was tased, or before he was tased a second time. Yet, Reado prepared an Aided Report (Plaintiffs' Exh. 4) in which he claimed that he "[a]ided an EDP with mental history. Got violent with police and started fighting." The jury also heard Reado deny that his report was untruthful, and give less than candid testimony about the testimony he had just given. (Tr. 246-57.)

The jury heard Hudson admit that Greenaway "was not taking any offensive action against the police" (Tr. 316-17), and was not physically threatening anyone when he first deployed his taser (Tr. 319.) Yet, Hudson tased Greenaway twice more even though he noted in his paperwork that the first tasering of Greenaway was effective. (Tr. 321.) Regarding Stio, the jury heard him admit that he knew that Greenaway was not engaging in threatening behavior before Hudson tased him (Tr. 697), and that he knew that the struggle he described, which the jury obviously rejected, was caused by Hudson's deployment of his taser. (Tr. 770.) Of course, the jury also heard him testify about how he noticed a can of white paint in the middle of the room upon his arrival in the second floor bedroom (Tr. 687), which no other defendant mentioned. While this fact might otherwise be insignificant, the jury could conclude that Stio was trying to gild the lily.

The jury heard Schmitt give absurd and inconsistent testimony at his deposition and trial. At trial, Schmitt admitted that he never saw Greenaway do anything threatening toward an officer before he went into the bathroom the first time. (Tr. 975.) At deposition, Schmitt testified that any time Hudson attempted to approach him in the bathroom, Greenaway "would swing at him with the

-18-

-- with the roller." (Tr. 965.) Hudson never gave that testimony, and, when confronted with the falsity of his prior testimony, Schmitt would not admit that his deposition testimony was false. Schmitt's subsequent testimony proved the falsity of that statement. (Tr. 965-67.)

The jury heard credible testimony from the plaintiffs, evasive, false and contradictory testimony from the County defendants – and the Village defendants. In sum, nothing about the jury's verdict should give this Court pause "that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 911 (2d Cir. 1997).

### B.   The Standards Governing Remittitur.

"It is well settled that calculation of damages is the province of the jury. . . . [T]he standard of appellate review of damage awards, whether compensatory or punitive, is whether the award is so high as to shock the judicial conscience and constitute a denial of justice." *Ismail v. Cohen*, 899 F.2d 183, 186 (2d Cir. 1990) (internal quotation marks and citations omitted). The fact that plaintiffs tried both federal and state claims to the jury does not alter this standard of review as the defendants did not ask that the Court distinguish between them. *Jackson v. Town of Hempstead*, 98 CV 5635, 2002 U.S. Dist. LEXIS 2398, *9 (E.D.N.Y. Feb. 4, 2002).

The Court must give substantial deference to the jury's evaluation of the evidence to support its damages award, the weight to be given to that evidence, and the inferences to be drawn from the evidence. *Ramirez v. NYC Off-Track Betting Corp.*, 1996 U.S. Dist. LEXIS 5715, *12 (S.D.N.Y. Apr. 30, 1996) (citation omitted), *aff'd in relevant part*, 112 F.3d 38 (2d Cir. 1997). The substantial deference to the jury's damages determination extends to any contemplated remittitur: "the judge may reduce the award 'only to the *maximum* amount that does not shock the conscience' to ensure that the jury's decision will be disturbed as little as possible." *Ramirez*, 1996 U.S. Dist. LEXIS 5715

-19-

at *13 (quoting *Trademark Research Corp. v. Maxwell Online, Inc.*, 995 F.2d 326, 337 (2d Cir. 1993)) (emphasis added).

In assessing whether an award of damages is excessive, "reference to other awards in similar cases is proper." *Ismail*, 899 F.2d at 186. The comparison to other awards, however, is not confined to awards arising out of §1983 cases, *id.*, the comparison is properly with regard to damages attributable to a type of injury, considering the severity of that injury, without regard to the cause of the injury. Furthermore, comparison to prior cases must account for inflation. *See Martinez v. Port Auth.*, 01 Civ. 721, 2005 U.S. Dist. LEXIS 19141, *58 & n.9 (S.D.N.Y. Sept. 2, 2005), *aff'd*, 445 F.3d 158, 160 (2d Cir. 2006).

### C.   The Jury's Excessive Force Award.

The County defendants argue that the Court should remit the jury's excessive force award, and suggest that an award of $100,000 is warranted. While Greenaway recognizes that remittitur may be warranted, the County defendants proposal of $100,000 is far too low. Based upon the evidence adduced at trial, which included the extraordinary physical pain of being tased four separate times, and the loss of the marked emotional progress which has not been regained, loss of relationship and trust with family members and past and future mental scarring that the tasings caused Greenaway to experience, an award of $5,000,000 is warranted.

Lest there be a mistake, the jury found that the officers systematic tasing of Greenaway was tantamount to torture. In *Bryan v. McPherson*, 630 F.3d 805 (9th Cir. 2010) (*en banc*), the Ninth Circuit described the deployment of an X26 (the successor to the M26) in dart mode,

> the X26 uses compressed nitrogen to propel a pair of "probes"—
> aluminum darts tipped with stainless steel barbs connected to the X26
> by insulated wires—toward the target at a rate of over 160 feet per
> second. Upon striking a person, the X26 delivers a 1200 volt, low
> ampere electrical charge through the wires and probes and into his

> muscles. The impact is as powerful as it is swift. The electrical impulse instantly overrides the victim's central nervous system, paralyzing the muscles throughout the body, rendering the target limp and helpless. . . . The tasered person also experiences an excruciating pain that radiates throughout the body.

*Bryan*, 630 F.3d at 824. In *Mattos v. Agarano*, 661 F.3d 433, 443 (9th Cir. 2011), the Ninth Circuit described the use of a taser in drive stun mode as follows: "When a taser is used in drive-stun mode, the operator removes the dart cartridge and pushes two electrode contacts located on the front of the taser directly against the victim. In this mode, the taser delivers an electric shock to the victim, but it does not cause an override of the victim's central nervous system as it does in dart-mode." As Judge Stein recognized, the "use of a taser in this manner serves a pain compliance purpose." *Garcia*, 43 F. Supp.3d at 290 (citations and quotations omitted).

The Ninth Circuit's description of the devastating pain a person experiences while being tased was exactly what the jury heard and saw from the plaintiffs. Greenaway described the effect of being tased as nothing he had ever experienced before. (Tr. 873.) It left him terrified. (Tr. 874.) With each subsequent tasing, the jury heard from Mr. Knight how he heard his son yell and scream out in such agony that he thought his "son would be another dead black man." (Tr. 613.) Mrs. Knight described how each time the taser was deployed she "heard [her] son screaming for his life." (Tr. 53.) Her son's screams were so chilling that they made her feel as if she was bleeding inside. (Tr. 54.)

The jury also heard from Beth Estergomy, a licensed clinical social worker who treated Greenaway both before and after April 25, 2010. Estergomy provided concrete examples about the psychological damage the tasings caused Greenaway. Greenaway suffered from "schizophrenia, however, he had a lot of bipolar type symptoms like depression and periods of mainly, like, manic episodes." (Tr. 778.) Greenaway showed tremendous progress while under Estergomy's care. For

example, by November 2009, Greenaway had found work and was discussing career options. By January, Greenaway was doing well in college, setting goals for himself and working on his personal interactions with others. (Tr. 782-84.) When she last saw Greenaway on April 14, 2010, Estergomy was quite optimistic regarding his progress. (Tr. 784-85.) As Greenaway stated, his working with Estergomy was "exceptional." (Tr. 883-84.)

The jury heard from Greenaway how his core values were destroyed. He bravely told the jury, "I believe everybody should be respected. And specifically the trust, it's to be a form of intimacy where you feel like you can tell the truth, you feel like you can receive love, you can receive truth, in a way where you can communicate back and forth without shame or worry or fear." (Tr. 883.) All that changed after April 25, 2010.

The injuries that Hudson and Stio inflicted upon Greenaway were life altering due to his fragility and susceptibility to the type of injury that Mr. & Ms. Knight, Estergomy and Greenaway described. Greenaway stopped attending school. Greenaway can no longer walk the streets without being afraid of meeting the police. As he shared with the jury, "I lost the fire for it. I was scared. I was scared of the police. I didn't want to -- I walked to Nassau Community College from my home, and the police followed me. (Tr. 884-85.)

Greenaway and Estergomy discussed how therapy was no longer effective. (Tr. 793, 885.) As Estergomy shared, Greenaway was definitely traumatized by the events of April 25th, and his subsequent hospitalization. (Tr. 785). He was anxious and somewhat depressed. He "was nervous and felt unsafe." (Tr. 789.) Perhaps most important, Estergomy directly linked Greenaway's psychological suffering to the trauma of the tasings: "His demeanor and affect in my first session with him during the intake and sessions after that, he did struggle with that experience. How did it effect him? I mean he had flashbacks, he had periods of -- well, he already had a history of

-22-

paranoia, so he didn't trust people, right? So, that really kind of triggered more of that experience."

(Tr. 792.)

Estergomy also discussed other ways that Greenaway had suffered. She described, how

Greenaway had become

> More withdrawn, not as outgoing. He was working on relationships prior to that. He was kind of expanding in a way because he was working on his job and his relationships with people and really working on forgiveness with his uncle; something happened there. So, he was kind of expanding, growing, and this kind of triggered the opposite of what. . . . More withdrawn, harder to feel or -- harder to make progress in therapy, at least; not feeling as safe; more paranoid of people in general. It wasn't just police officers that he felt more untrusting toward, it was just people in general.

(Tr. 793.)

Perhaps most disturbing, the jury heard how Greenaway's relationship with his mother and step-father – the two constants in his life – suffered because he questioned their motives. In fact, they no longer live in Hempstead together. (Tr. 887.) As both Mr. and Ms. Knight described, Greenaway became distrusting of them, and no longer wanted to be around them. He utterly withdrew from them after April 25th. (Tr. 63-65, 616-17.)

Finally, the jury also saw and heard how Greenaway will be forever reminded of the events of April 25, 2010. The jury saw photographs of the scars and taser probes embedded in Greenaway's chest and stomach (Tr. 876), and heard how the scarring remained to the present day. (Tr. 880-81.)

The jury heard and saw how Hudson's and Stio's repeated tasings caused Greenaway to experience devastating physical and psychological effects. While the physical pain attendant to the scars may pass, the scars on Greenaway's chest and stomach are a constant reminder of the events of April 25th. For these reasons, an award of $5,000,000 is warranted. *See Jennings v. Fuller*, No.

-23-

13-13308, 2017 U.S. Dist. LEXIS 77945, *37-39 (E.D. Mich. May 23, 2017) (notwithstanding existence of substantial physical injuries lasting in three hours of physical pain, including a fear of impending death due to an inability to breathe, the trial court remitted jury award of $17.36 million in past and future suffering to $5,000,000 given that plaintiff was "employed. His injuries were not fatal. He is not advanced in age or totally or permanently disabled.")

### D.   The Jury's Award of $100,000 in Punitive Damages is Reasonable.

In seeking to remit the jury's award of punitive damages as against Hudson and Stio, the County defendants fail to view the evidence most favorably to Greenaway. *See Payne v. Jones*, 711 F.3d 85, 98-99 n.10 (2d Cir. 2013). The jury assessed $100,000 in damages against each defendant. *McFadden v. Sanchez*, 710 F.2d 907, 913-14 (2d Cir. 1983). Similarly, the jury did not simply award $100,000 based upon a single constitutional violation. As instructed (Tr. 1069-71), they considered the officers' conduct as a whole and awarded punitive damages for the officers' callous disregard for Greenaway's constitutional rights and well-being. As Judge Block recognized, using gratuitous violence on a non-resisting person warrants the imposition of punitive damages. *Alla*, 979 F. Supp.2d at 378.

In *Lee v. Edwards*, 101 F.3d 805 (2d Cir. 1996), the Second Circuit established the criteria governing a district court's review of an award of punitive damages:

> Punitive damages are available in a § 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Although a jury has wide discretion, a district court may refuse to uphold a punitive damage award when the amount is "so high as to shock the judicial conscience and constitute a denial of justice." . . . .

. . .

-24-

> The Supreme Court [has] erected three guideposts that should assist us in the application of our standard, by which we deem excessive a punitive damage award that "shocks our judicial conscience," *Hughes*, 850 F.2d at 883. These guideposts include: (1) the degree of reprehensibility of the tortious conduct; (2) the ratio of punitive damages to compensatory damages; and (3) the difference between this remedy and the civil penalties authorized or imposed in comparable cases. *Gore*, [517 U.S. at 575]. . . .

*Lee*, 101 F.3d at 808-09 (citations omitted) – *Payne*, *supra*, continues to counsel district courts to apply the *Gore* factors. Each of the "guideposts" identified in *Gore* support upholding the jury's award of punitive damages in this case.

### 1.    Reprehensibility.

"Reprehensibility," as the Supreme Court has recognized, is often the critical factor in weighing a punitive damages award. *Gore*, 517 U.S. at 575. The County defendants claim a lack of reprehensibility because Hudson and Stio "were preforming their duties in securing Greenaway in the least intrusive manner . . . and used the least force necessary to safely take Greenaway into custody and to the hsopital, as his parents wished." Defs. Memo at 38-39. Again, this ignores the plaintiffs' testimony in its entirety.

One of the *Gore* factors to be considered in evaluating reprehensibility is whether the conduct involved violence. *Gore*, 517 U.S. at 575-76. Here, Hudson and Stio repeatedly tased Greenaway even though he was unarmed and non-threatening. This undisputably qualifies as "violent." *Alla*, 979 F. Supp.2d at 378.

### 2.    The Ratio of Punitive Damages to Compensatory Damages.

In order to determine if there is a permissible ratio of punitive damages to compensatory damages, "the proper inquiry is whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that

actually occurred." *Gore*, 517 U.S. at 581 (quotation marks and citations omitted). The County defendants make no argument on this issue presumably because the ratio of punitive to compensatory damages is far smaller than 1:1.

### 3.   Comparable Civil or Criminal Penalties.

Finally, district courts may compare punitive damages awards to civil or criminal penalties for similar conduct, to insure that defendants had adequate notice of the severity with which society views their actions. *Gore*, 517 U.S. at 583-84. Again, the County defendants present no argument. "Though *Gore* initially described the third guidepost with reference to 'civil' penalties, its discussion of this guidepost makes clear that the relevant comparison is with both 'civil and criminal penalties,'" *Mathie v. Fries*, 121 F.3d 808, 816 (2d Cir. 1997) (citations omitted).

If prosecuted criminally, Hudson's and Stio's conduct would constitute Assault in the Second Degree under New York law (Penal Law § 120.05), a Class D felony. Section 120.05 provides, in relevant part: "A person is guilty of assault in the second degree when: 1. With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person." N.Y. Penal Law § 120.05(1). Under New York State law, Hudson and Stio would face a maximum term of imprisonment of seven years. N.Y. Penal Law § 70.00(2)(d). A jury could find that their conduct also constituted a violation of 18 U.S.C. § 242. If convicted, Hudson and Stio could face ten years in jail and a fine of $250,000. In addition to the jail time discussed above, such conduct may be penalized by a $250,000 fine. *See* 18 U.S.C. § 3571(b)(3).[4] Defendants' conduct also violated the New York State "B felony" of kidnapping in the second degree, N.Y. Penal Law § 135.20, which is punishable by a prison sentence of up to 25 years. *Id.* § 70.00. *Thomas*, 903 F.

---

[4] For the reasons stated above, Hudson and Stio probably faced fines of $500,000, if not more.

Supp. 2d at 268. *See Lee*, 101 F.3d at 811 (referring to State law penalties, "the civil and criminal penalties understate the notice, because the misconduct at issue was committed by a police officer").

### 4.   Other Case Law.

In addition to ignoring the substantial fines and jail time, and the venality of their actions, Hudson and Stio ignore relevant case law in their effort to convince the Court to reduce the jury's award of punitive damages. For example, in *Komlosi v. Fudenberg*, 88 Civ. 1792, 2000 U.S. Dist. LEXIS 4237 (S.D.N.Y. Mar. 31, 2000), the district court upheld an award of punitive damages in the amount of $500,000 in the face of an overall reduced award of compensatory damages of $1,872,988.00.

*Alla* and *Thomas*, *supra*, are instructive. In *Alla*, Judge Block upheld awards of punitive damages for false arrest in the amount of $150,000 per defendant. 979 F. Supp. 2d at 373-75. In so doing, Judge Block surveyed awards in other false arrest cases, adjusted them for inflation, and recognized that $150,000 did not shock the conscience. *Id.* Regarding the $150,000 award of punitive damages for excessive force, Judge Block upheld it based upon the defendant's having punched the unarmed, non-resisting plaintiff one time in the face, which caused the plaintiff to suffer a broken zygomatic arch. *Id.* at 378-79.

In *Thomas*, *supra*, a case with striking familiarity, the jury awarded a combined punitive damages award of $500,000 against three defendants who were found to have falsely arrested and used excessive force while subduing an allegedly emotionally disturbed person. Judge Carter found the defendants' conduct utterly reprehensible. One defendant "egregiously abused the authority granted to him to under New York State's civil commitment law" because he arrested the plaintiff even though the plaintiff neither "appear[ed] to be mentally ill" or "conducted himself or herself in a manner which is likely to result in serious harm to the person or others." Moreover, while

-27-

effecting plaintiff's arrest, defendants had no compunction about using serious force even though no basis existed to do so. *Thomas*, 903 F. Supp. 2d at 266-67.

Like the defendants in *Alla*, and even more so in *Thomas*, Hudson and Stio repeatedly tased a defenseless man who posed no threat to them, himself or anyone else. They also ignored the repeated requests of Mr. and Mrs. Knight, and Greenaway, to leave their house. For these reasons, the awards of $100,000 are more than reasonable.

E.   **The Jury's Award of $100,000 For False Arrest Is Reasonable**.

The jury awarded Greenaway $100,000 in compensatory damages for his false arrest. In seeking a remittitur to $10,000, the County defendants state that they only seized Greenaway for a brief amount of time before being brought to the hospital, where he remained in the psychiatric ward. Defs. Memo at 39. The County defendants' argument ignores that Greenaway spent almost two weeks at the Nassau County Medical Center due to their conduct. (Tr. 881.) As Judge Carter recognized in rejecting the identical argument,

> only an intervening act or omission that is extraordinary under the circumstances and is not foreseeable in the normal course of events . . . may break the causal chain of events and remove liability from an earlier acting defendant. . . . An intervening act must be a new and independent force, which was not set in motion by the defendant's own wrongful acts, and must rise to such a level of culpability as to replace the defendant's [culpability] as the legal cause. Here, it can hardly be deemed "extraordinary" or "not foreseeable" that when a police officer calls an ambulance for a person suspected of having a mental illness and threatening suicide, that the medical personnel at the hospital will treat him accordingly. This treatment was not a new and independent force but rather was "set in motion by the defendant[s'] own wrongful acts. . . . Furthermore, to the extent that Thomas was yelling and "incoherent" by the time he got to the hospital, this too was the foreseeable result of Kelly's wrongful acts.

*Thomas*, 903 F. Supp. 2d at 264 (citations and quotations omitted).

-28-

The County defendants' argument also ignores that the jury's verdict of $100,000 represented awards for both emotional distress and loss of liberty. The Court so instructed the jury without objection (Tr. 1067) in accordance with the applicable law. *Martinez v. Port Auth.*, 445 F.3d 158, 161 (2d Cir. 2006). In light of the emotional damage and loss of liberty suffered by Greenaway, the Court should reject the County defendants' arguments.

**F.**     **The Jury's Combined $60,000 Award For Unlawful Entry Is Reasonable.**

Regarding the jury's unlawful entry award, the County defendants argue that "the jury's award of $60,000 is also excessive[,]" and suggest that the Court remit the damages to $10,000-$15,000. Defs. Memo at 39. The County defendants ignore the harm caused to the Knights by the defendants in general, and the County defendants in particular. Mr. Knight described the terror he experienced after being locked out of the bedroom and hearing "an electrical and popping sound combined, like, noises with a pop in it, pop, pop, pop." After each tasing, he heard his son "saying 'ah,' like a yell and scream combined." All he could think was that his "son would be another dead black man." (Tr. 613.) Mrs. Knight described how after she heard each of her son's screams her "insides bled." (Tr. 54.) And, how after she "heard nothing [she] just started rolling around on the floor crying." (Tr. 56.) Because consequential damages were recoverable for this claim, *see Julia Props., LLC v Levy*, 137 A.D.3d 1224, 1226 (2d Dep't 2016), the jury's award should not be disturbed.

## CONCLUSION

For the foregoing reasons, defendants' motions should be denied except as otherwise noted,

together with such other and further relief as is just and proper.

Dated: New York, New York
      August 14, 2017

                          Respectfully submitted,

                          LAW OFFICES OF
                          FREDERICK K. BREWINGTON

By:    */S/ Frederick K. Brewington*
                          FREDERICK K. BREWINGTON
                          *Attorneys for Plaintiffs*
                          556 Peninsula Blvd.
                          Hempstead, NY 11550
                          (516) 489-6959

                          SCOTT A. KORENBAUM, ESQ.

By:    */S/ Scott A. Korenbaum*
                          SCOTT A. KORENBAUM
                          *Attorneys for Plaintiff*
                          11 Park Place, Suite 914
                          New York, NY 10007
                          (212) 587-0018