UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

SHUAYB GREENAWAY, SHARON KNIGHT, &
AVERY KNIGHT,

                                   *Plaintiffs,*

Docket No.:  CV-11-02024
(LDH) (AKT)

                    *- against -*

COUNTY OF NASSAU AND NASSAU COUNTY
POLICE OFFICERS SGT. VINCENT PAPA, in his
individual and official capacities, P.O. RONALD
SCHMITT, in his individual and official capacities, P.O.
CLARENCE HUDSON, in his individual and official
capacities, and P.O. WILLIAM STIO, in his individual
and official capacities, INCORPORATED VILLAGE
OF HEMPSTEAD AND VILLAGE OF HEMPSTEAD
POLICE OFFICERS P.O. FRANE REDO, in his
individual and official capacities, AND P.O. WALTER
OHR, in his individual and official capacities,

                            *Defendants.*

-------------------------------------------------------------------------X

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS VILLAGE OF HEMPSTEAD's, POLICE OFFICERS
FRANE READO's and WALTER OHR's MOTION PURSUANT TO
RULES 50 and 59 of THE FEDERAL RULES OF CIVIL PROCEDURE

                                      LAW OFFICES OF
                                      FREDERICK K. BREWINGTON
                                      *Attorneys for Plaintiffs*
                                      556 Peninsula Boulevard
                                      Hempstead, New York 11550
                                      (516) 489-6959

                                      SCOTT A. KORENBAUM, ESQ.
                                      *Attorneys for Plaintiffs*
                                      I11 Park Place Suite 914
                                      New York, New York 10007
                                      (212) 587-0018

*Of Counsel:*   *FREDERICK K. BREWINGTON*
                  *SCOTT A. KORENBAUM*

## TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

POINT I

      AMPLE EVIDENCE SUPPORTED THE JURY'S VERDICT THAT OHR
      FAILED TO STOP THE VIOLATION OF GREENAWAY'S
      CONSTITUTIONAL RIGHTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    The Standards Governing The Village Defendants' Motions. . . . . . . . . . . . . . . . 2

      B.    The Village Defendants Did Not Preserve Their Argument. . . . . . . . . . . . . . . . 3

      C.    Ample Evidence Existed for the Jury to Conclude That Ohr Failed To Intervene
           To Stop The Violations of Greenaway's Federal Constitutional Rights . . . . . . . . 4

POINT II

      THE JURY CORRECTLY FOUND THAT VILLAGE POLICY SPECIFICALLY
      PROVIDED FOR THE SEIZURE OF EMOTIONALLY DISTURBED
      PERSONS IN VIOLATION OF THEIR FEDERAL CONSTITUTIONAL
      RIGHTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

POINT III

      THE COURT SHOULD LEAVE INTACT THE JURY'S AWARD OF $50,000
      IN PUNITIVE DAMAGES AGAINST OHR BECAUSE, AMONG OTHER
      THINGS, HE BLATANTLY VIOLATED MRS. KNIGHT'S
      CONSTITUTIONAL RIGHTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      1.    Reprehensibility. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

2.     The Ratio of Punitive Damages to Compensatory Damages. . . . . . . . . . . . . . . 13

3.     Comparable Civil or Criminal Penalties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

POINT IV

READO AND OHR ARE NOT ENTITLED TO QUALIFIED IMMUNITY AS
THEY VIOLATED THE MOST BASIC OF WELL-ESTABLISHED
CONSTITUTIONAL RIGHTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

A.     The Village Defendants Did Not Preserve Their Argument. . . . . . . . . . . . . . . 14

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

**CASE NAMES**            **PAGE NOS.**

*Alla v. Verkay,*
979 F. Supp.2d 349(E.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

*Amnesty Am. v. Town of W. Hartford,*
361 F.3d 113 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Anderson v. Branen,*
17 F.3d 552 (2d Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Askins v. Doe,*
727 F.3d 248  (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Bmw of N. Am. v. Gore,*
517 U.S. 559 (1996)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14

*Blissett v. Coughlin,*
 66 F.3d 531 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Case v. City of New York, 14 Civ. 9148,*
 2017 U.S. Dist. LEXIS 19374 (S.D.N.Y. Feb. 10, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Fabri v. United Technologies Intern., Inc.,*
387 F.3d 109  (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Foster v. City of Philadelphia*, 01-CV-3810
2004 U.S. Dist. LEXIS 1302 (E.D. Pa. Jan. 30, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Galdieri-Ambrosini v. Nat'l Realty & Development Corp.,*
 136 F.3d 276  (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hope v. Pelzer*,
536 U.S. 730  (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Ismail v. Cohen,*
899 F.2d 183 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Jackson v. Town of Hempstead*, 98 CV 5635,
2002 U.S. Dist. LEXIS 2398 (E.D.N.Y. Feb. 4, 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Jeffes v. Barnes,*
208 F.3d 49  (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Kerman v. City of New York,*
261 F.3d 229 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Lee v. Edwards,*
101 F.3d 805 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13, 14

*Lore v. City of Syracuse,*
670 F.3d 127  (2d Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Mathie v. Fries,*
121 F.3d 808  (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Maxwell v. City of New York,*
380 F.3d 106 (2d Cir.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*McCardle v. Haddad,*
131 F.3d 43 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 15, 16

*Nimkoff v. Dollhausen,*
751 F. Supp. 2d 455 (E.D.N.Y 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Payne v. Jones,*
711 F.3d 85 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Payton v. New York,*
445 U.S. 573  (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17

*Ramirez v. NYC Off-Track Betting Corp.,*
1996 U.S. Dist. LEXIS 5715, *12 (S.D.N.Y. Apr. 30, 1996) aff'd in relevant part,
112 F.3d 38 (2d Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Reeves v. Sanderson Plumbing Prods., Inc.,
530 U.S. 133 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Robison v. Via,*
821 F.2d 913 (2d Cir.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Rucks v. City of New York*,
96 F. Supp.3d 138  (S.D.N.Y. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Russo v. City of Cincinnati*,
953 F.2d 1036 (6th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Smith v. Wade*,
461 U.S. 30, 47-48 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*Tolbert v. Queens College*,
 242 F.3d 58 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Toporoff Engineers, P.C. v. Fireman's Fund Ins. Co.*,
371 F.3d 105  (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Trademark Research Corp. v. Maxwell Online, Inc.*,
 995 F.2d 326 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*U.S. v. U.S. District Court*,
 407 U.S. 297  (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17

*Walker v. City of New York*,
974 F.2d 293 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Zellner v. Summerlin*,
494 F.3d 344 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

## <u>STATUTES</u>

18 U.S.C. § 242. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fed. R. Civ. Pro 50(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fed. R. Civ. Pro 50(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. Pro 50(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Mental Hygiene Law §9.41 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

N.Y. Penal Law § 70.15(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

N.Y. Penal Law § 140.15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

N.Y. Penal Law § 120.00 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## PRELIMINARY STATEMENT

Plaintiffs Shuay'B Greenaway, Sharon Knight and Avery Knight submit this memorandum of law in opposition to the motion of defendants Incorporated Village of Hempstead and Village of Hempstead Police Officers Frane Reado and Walter Ohr (the "Village defendants"), brought pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure, for judgment as a matter of law, a new trial, or a reduction of the jury's award of compensatory and punitive damages. Because plaintiffs agree with some of the Village defendants' arguments, Declaration of Scott A. Korenbaum Submitted in Opposition to the County Defendants' Post-Trial Motions ("Korenbaum Dec."), dated August 14, 2017, at ¶¶ 5 - 7, we address below the following contentions: (1) that insufficient evidence existed to support the jury's failure to intervene award against Ohr; (2) the Village is entitled to judgment as a matter of law on plaintiff's municipal liability claim; (3) the punitive damages award against Ohr was excessive and unwarranted; and (4) Reado and Ohr and entitled to qualified immunity. Having presided over six days of trial, including jury selection and jury deliberations, we are confident the Court appreciates that ample evidence existed to support the jury's findings of liability and damages. In arguing to the contrary, the Village defendants violate the cardinal principles governing this Court's review of the verdict because they view the evidence most favorably to them. Moreover, many of their arguments are not preserved.

## STATEMENT OF FACTS

Because the Court presided over the trial, plaintiffs presume its familiarity with the proceedings. Where warranted, plaintiffs reference the relevant pages of the trial transcripts, which are annexed to the Korenbaum Dec. to support their arguments.

## ARGUMENT

## POINT I

### AMPLE EVIDENCE SUPPORTED THE JURY'S VERDICT THAT OHR FAILED TO STOP THE VIOLATION OF GREENAWAY'S CONSTITUTIONAL RIGHTS

In moving to set aside the jury's finding that Ohr failed to intervene to stop the violation of Greenaway's federal constitutional rights, the Village defendants rely exclusively upon Ohr's testimony to conclude that Greenaway presented a danger to himself and the defendants present inside of 221 Amherst Street on April 25, 2010. Memorandum of Law in Support of Village Defendants' Motion for Judgment as a Matter of Law And/or to Alter/Amend the Judgment ("Defs. Memo") at 11-19. This Court should reject this argument because it is not preserved, and otherwise is meritless.

### A.   The Standards Governing The Village Defendants' Motions.

"In entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record." That review

> must draw all reasonable inferences in favor of the nonmoving party
> . . . Thus, although the court should review the record as a whole, it
> must disregard all evidence favorable to the moving party that the
> jury is not required to believe. . . . That is, the court should give
> credence to the evidence favoring the nonmovant as well as that
> evidence supporting the moving party that is uncontradicted and
> unimpeached, at least to the extent that evidence comes from
> disinterested witnesses.

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000) (citations and quotations omitted).; The Court cannot grant a motion for lack of sufficient evidence unless there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, []or . . . the evidence in favor of defendants so

overwhelming that reasonable and fair minded [persons] could not arrive at a verdict against [them]." *Toporoff Engineers, P.C. v. Fireman's Fund Ins. Co.*, 371 F.3d 105, 108 (2d Cir. 2004) (quotation marks and citations omitted).  In reaching its verdict, the jury was free to select the evidence it chose to rely upon. *See Lore v. City of Syracuse*, 670 F.3d 127, 150 (2d Cir. 2012).

## B.     The Village Defendants Did Not Preserve Their Argument.

In moving pursuant to Fed. R. Civ. Proc. 50(a), the Village Defendants only argued, as it relates to their Rule 50(b) motion, that "plaintiffs' complaint [should be dismissed] in its entirety on the grounds of qualified immunity, that based upon the evidence that was elicited during the trial of the action of the Hempstead Police Officers were objectively reasonable under the circumstances[,]" (Tr. 1017), and that there was no evidence "that the Village Officers took Greenaway into custody." (Tr. 1025.)

Rule 50 provides, in relevant part,  that "[a] motion for judgment as a matter of law may be made at any time before the case is submitted to the jury.  The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. Proc. 50(a)(2). Furthermore, "a posttrial motion for JMOL can properly be made only if, and to the extent that, such a motion specifying the same grounds was made prior to the submission of the case to the jury." *McCardle v. Haddad*, 131 F.3d 43, 51 (2d Cir. 1997) (quotations omitted); *Tolbert v. Queens College*, 242 F.3d 58, 70 (2d Cir. 2001).

The Village defendants only argued that they were entitled to qualified immunity, which presumes an underlying constitutional deprivation. *See Askins v. Doe*, 727 F.3d 248, 253-54 (2d Cir. 2013).  Moreover, the Village defendants never articulated any facts that support their conclusion that "Ohr (1) did not have a realistic opportunity to intervene and prevent the County Officers from using a Taser upon Plaintiff Greenaway; and (2) did not know that Plaintiff Greenaway's

-3-

constitutional rights were being violated." Defs. Memo at 12.  In *Lore*, the Second Circuit reemphasized that Rule 50(a)(2)'s specificity requirement was mandatory.  670 F.3d at 152-53 ("[T]he specificity requirement is obligatory. . . .  A Rule 50(a) motion requesting judgment as a matter of law on one ground but omitting another is insufficient to preserve a JMOL argument based on the latter.") (citations and quotations omitted).)

The Village defendants provide more than six pages of Ohr's testimony in support of their argument.  They never articulated any of it in support of their Rule 50(a) motion.  Yet, the purpose behind Rule 50(a)'s requirement is to provide the non-movant with the opportunity to cure any alleged defects in the sufficiency of proof.  *Galdieri-Ambrosini v. Nat'l Realty & Development Corp.*, 136 F.3d 276, 286-87 (2d Cir. 1998).  Accordingly, the Village Defendants have waived their right to seek judgment as a matter of law on this claim.  *Lore, supra. See Tolbert*, 242 F.3d at 77 ("A motion that identifies one element of a claim is insufficient to permit the district court to grant JMOL for lack of proof of some other, unspecified, element, and is insufficient to permit appellate review of the sufficiency of the evidence as to the unspecified element. . . .") (citations omitted).)

### C.      Ample Evidence Existed for the Jury to Conclude That Ohr Failed To Intervene To Stop The Violations of Greenaway's Federal Constitutional Rights

Regarding the failure to intervene claims, the Court instructed the jury, without objection, as follows,

> An officer who fails to intervene is liable for the preventable harm caused by the actions of another officer if that officer either observes or has reason to know that citizens' constitutional rights are being infringed upon.  However, before an officer can be liable for a failure to intervene, you must find that the officer had a realistic opportunity to prevent the harm from occurring, that is, that he had sufficient time to intercede and a capability to prevent the harm.
>
> Thus, before you can hold any defendant liable for failure to intervene you must conclude that the following elements have been

-4-

> met: First, that a defendant or defendants falsely imprisoned plaintiff Greenaway or used excessive force on any of the plaintiffs or unlawfully remained in plaintiffs' home; second, that the other defendants or any one of them observed those actions and knew they were unlawful; third, that those defendants or any one of them, had a realistic opportunity to intervene, as I just described that phrase; and four, that those defendants or any one of them failed to take reasonable steps to prevent the aforementioned violation of plaintiffs' constitutional rights.

(Tr. 1059-60.)

As noted, the Village defendants rely solely on Ohr's testimony that he did not have a chance to intervene to prevent Greenaway's unlawful seizure and the repeated tasings. However, the jury heard from Mrs. Knight how, after Ohr had forced her and her husband out of the bedroom, Ohr was alone with the other defendants in the upstairs bedroom. (Tr. 105.) At that time, AMT Arce testified that Hudson tased Greenaway for the first time after the Knights had been locked out of the bedroom, and the first taser caused Greenaway to fall face first. Seven officers were present at this time. (Tr. 481-84.) Because each successive tasing occurred within a minute of one another (Tr. 350 ("All four under, probably well under four minutes.")), Ohr had ample time to attempt to stop the tasings. And, as it concerned the seizure and removal of Greenaway from 221 Amherst, Ohr was present for the entire time. (Tr. 489.) Additionally, with the first use of the Taser and the screams reported by Plaintiffs, there is no factual dispute that Ohr was well aware of Greenaway being hurt just feet away from where he was located. As such, the evidence amply supported the jury's verdict finding Ohr liable for failing to intervene. *Anderson v. Branen*, 17 F.3d 552, 557-58 (2d Cir. 1994).

**POINT II**

**THE JURY CORRECTLY FOUND THAT VILLAGE POLICY SPECIFICALLY PROVIDED FOR THE SEIZURE OF EMOTIONALLY DISTURBED PERSONS IN VIOLATION OF THEIR FEDERAL CONSTITUTIONAL RIGHTS**

In seeking judgment as a matter of law regarding municipal liability,[1] the Village focuses on the taser training (or lack thereof) provided to Ohr and Reado. Defs. Memo at 22. As plaintiffs' counsel made clear during his closing argument, plaintiffs' claims against the Village and County rested on the lack of training regarding the standards for involuntarily committing emotionally disturbed individuals. (Tr. 1010-11.) Properly understood, there was ample evidence to support the jury's finding of municipal liability.

In *Case v. City of New York*, 14 Civ. 9148, 2017 U.S. Dist. LEXIS 19374 (S.D.N.Y. Feb. 10, 2017), Judge Torres succinctly articulated the standards governing failure to train claims against municipalities,

> A municipality may be held liable under § 1983 only if the plaintiff's injury is the result of a municipal policy, custom, or practice. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 . . . (1978). To establish a municipal policy or custom, a plaintiff must allege that . . . : (1) "a particular municipal action itself violates federal law, or directs an employee to do so," *Board of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 . . . (1997); (2) an "authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right," *id.* at 405; (3) unconstitutional "practices [are] so persistent and widespread as to practically have the force of law," *Connick v. Thompson*, 563 U.S. 51, 61 . . . (2011); or (4) a municipality's failure to train its employees "about their legal duty to avoid violating citizens' rights" amounts to "deliberate indifference," *id.* Moreover, "there must be a 'direct causal link between [the] municipal policy or custom and the alleged constitutional deprivation.'" *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 531 (S.D.N.Y. 2012) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 . . . (1989)). "[T]he mere assertion . . . that

---

[1] The Village defendants adequately preserved this argument, unlike their other ones.

> a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference."

*Case*, 2017 U.S. Dist. LEXIS 19374 at *62-63.

In *Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992), the Second Circuit established the elements underlying failure to train claims:

> First, the plaintiff must show that a policymaker knows "to a moral certainty" that her employees will confront a given situation. . . . Thus, a policymaker does not exhibit deliberate indifference by failing to train employees for rare or unforeseen events. Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation. . . . Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.

*Id.* at 297-98 (citations and quotations omitted). *See also Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 130 n.10 (2d Cir. 2004) (recognizing that the plaintiff, at the summary judgment stage, identify a specific deficiency in the municipality's training).

As the Court recognized, "Not a single officer came close to articulating a standard that approached that which is consistent with the mental hygiene law." (Tr. 1020.) The Court's observation was well-founded. The jury heard Reado give the following testimony:

> Question: When a mentally aided person who is not violent tells you that he does not want to go to the hospital, what, if anything, do you do at that point?
>
> Answer: You reevaluate based on your training and you make a determination if he is in a correct state of mind not to go and if he is in a correct state of mind, he stays.
>
> * * *
>
> Q Sir, you used the term -- withdrawn. And, sir, the term "correct state of mind," was that part of your training?

A No, sir.

Q And, sir, did you know at that time as a police officer what was, what the standard was in order to take a person into custody that was a mentally aided?

A There is no standard.

(Tr. 166-67.)  Based upon this testimony alone, municipal liability could attach.  *Russo v. City of Cincinnati*, 953 F.2d 1036, 1047 (6th Cir. 1992);  *Foster v. City of Philadelphia*, 01-CV-3810, 2004 U.S. Dist. LEXIS 1302, *42-43 (E.D. Pa. Jan. 30, 2004).

The jury could find that Reado set the wheels in motion based upon his understanding (or lack thereof) of what Mental Hygiene Law § 9.41 required.  Reado placed himself in the heart of the interaction with Greenaway – as demonstrated above, Ohr did as well.  Reado briefed Hudson as Hudson entered the bedroom.  Reado told Hudson to deploy the taser, and may have even said "assist me here, tase this guy." (Tr. 182-83, 316).  While neither Reado nor Ohr deployed a taser, which can explain the jury's finding in their favor on Greenaway's excessive force claim, the jury could also find that the absence of any training in the standards governing the circumstances under which an emotionally disturbed person could be seized caused Reado and Ohr to fail to intervene to stop the blatantly unconstitutional seizure[2] of Greenaway.  *Jeffes v. Barnes*, 208 F.3d 49, 61-63 (2d Cir. 2000) (once the plaintiff establishes a basis to impose municipal liability, the issue of causation is for the jury).

The jury also heard incredible testimony from Hudson regarding the training he received that bears repeating: "what I was trained as a police officer, sorry, we may take someone into custody against their wishes if we determine that they might be a danger to themselves or to others and also

---

[2] By "seizure" we refer to both the repeated deployment of the taser and the defendants taking Greenaway to the Nassau County Medical Center.

if you're on medication and you're noncompliant, we may, in our opinion, if we feel it's necessary,

we may take you into custody so that you can become compliant with that medication as well." (Tr.

348.)   While plaintiffs recognize that Hudson was a member of the Nassau County Police

Department, Reado and Ohr received their training at the Nassau County Police Academy (Tr. 135-

36; 277), which permitted the jury to conclude that they received the same training as members of

the Nassau County Police Department.

**POINT III**

**THE COURT SHOULD LEAVE INTACT THE JURY'S
AWARD OF $50,000 IN PUNITIVE DAMAGES AGAINST
OHR BECAUSE, AMONG OTHER THINGS, HE
BLATANTLY VIOLATED MRS. KNIGHT'S
CONSTITUTIONAL RIGHTS**

The Village defendants argue that the Court should vacate the jury's award of punitive

damages as against Ohr because "a reasonable jury could <u>not</u> have found that Officer Ohr's conduct

was performed with 'evil intent' or that there was any 'positive element of conscious wrongdoing.'"

Defs. Memo at 23.   Alternatively, they request that the Court remit the award to $10,000.   Defs.

Memo at 24 (emphasis in original).

Ohr's argument should be rejected because he did not argue at the close of the case that Mrs.

Knight did not make a sufficient showing to warrant punitive damages.   As such, it is now waived.

*Fabri v. United Technologies Intern., Inc.*, 387 F.3d 109, 125 (2d Cir. 2004); *Alla v. Verkay*, 979

F. Supp.2d 349, 372-73 (E.D.N.Y. 2013).

Ohr's argument also fails on the merits.   This Court properly instructed the jury in relevant

part, without objection, as follows,

> You may award plaintiffs punitive damages if you find that the acts
> or omissions of a defendant were done maliciously or wantonly. An
> act or failure to act is a maliciously done if it is prompted by ill will

-9-

> or spite towards the injured person. An act or failure to act is wanton if done with reckless or callous disregard for the rights of the injured person. A plaintiff has the burden of proving, by a preponderance of the evidence, that a defendant acted maliciously or wantonly with regard to a plaintiff's rights.
>
> If you find by a preponderance of the evidence that a defendant acted with malicious intent to violate plaintiffs's federal rights or unlawfully injure them, or if you find that the defendant acted with callous or reckless disregard of plaintiffs rights, then you may award punitive damages.

(Tr. 1069.)

Properly understood, the jury found that Ohr blatantly disregarded the rights of Mrs. Knight to be safe in her own home, and that nothing was going to stop Ohr from accomplishing his goal of allowing his fellow officers from effectuating a blatantly unconstitutional seizure of Greenaway. The jury heard how Ohr disregarded repeated requests to leave the home (Tr. 173-75, 182). How Ohr "took [Mrs. Knight's] phone and he threw it out the door." (Tr. 50.) The jury also heard how Ohr manhandled Mrs. Knight as if he were a dog chewing on a rag doll. Ohr shoved Mrs. Knight so hard that it caused her to land on her "back on the floor against the wall." (Tr. 50.) As a result of the manhandling, Mrs. Knight shared with the jury that she "felt so violated, so disrespected and so afraid, [she] didn't know what to do." (Tr. 51.) Under the circumstances, the jury could and did easily conclude that Ohr acted with "reckless or callous disregard for the rights of" Mrs. Knight. *Smith v. Wade*, 461 U.S. 30, 47-48 (1983).

The jury's award of $50,000 is also reasonable. "It is well settled that calculation of damages is the province of the jury. . . . [T]he standard of appellate review of damage awards, whether compensatory or punitive, is whether the award is so high as to shock the judicial conscience and constitute a denial of justice." *Ismail v. Cohen*, 899 F.2d 183, 186 (2d Cir. 1990) (internal quotation marks and citations omitted). The fact that plaintiffs tried both federal and state claims to the jury

-10-

does not alter this standard of review as the defendants did not ask that the Court distinguish between them. *Jackson v. Town of Hempstead*, 98 CV 5635, 2002 U.S. Dist. LEXIS 2398, *9 (E.D.N.Y. Feb. 4, 2002).

The Court must give substantial deference to the jury's evaluation of the evidence to support its damages award, the weight to be given to that evidence, and the inferences to be drawn from the evidence. *Ramirez v. NYC Off-Track Betting Corp.*, 1996 U.S. Dist. LEXIS 5715, *12 (S.D.N.Y. Apr. 30, 1996) (citation omitted), *aff'd in relevant part*, 112 F.3d 38 (2d Cir. 1997). The substantial deference to the jury's damages determination extends to any contemplated remittitur: "the judge may reduce the award 'only to the *maximum* amount that does not shock the conscience' to ensure that the jury's decision will be disturbed as little as possible." *Ramirez*, 1996 U.S. Dist. LEXIS 5715 at *13 (quoting *Trademark Research Corp. v. Maxwell Online, Inc.*, 995 F.2d 326, 337 (2d Cir. 1993)) (emphasis added).

In seeking to remit the jury's award of punitive damages, Ohr fails to view the evidence most favorably to Mrs. Knight. *See Payne v. Jones*, 711 F.3d 85, 98-99 n.10 (2d Cir. 2013). The jury did not simply award $50,000 based upon a single constitutional violation. As instructed (Tr. 1069-71), they considered Ohr's conduct as a whole and awarded punitive damages for his callous disregard for Mrs. Knight's constitutional rights and well-being. As Judge Block recognized, using gratuitous violence on a non-resisting person warrants the imposition of punitive damages. *Alla*, 979 F. Supp.2d at 378.

In *Lee v. Edwards*, 101 F.3d 805 (2d Cir. 1996), the Second Circuit established the criteria governing a district court's review of an award of punitive damages:

> Punitive damages are available in a § 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the

-11-

federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).  Although a jury has wide discretion, a district court may refuse to uphold a punitive damage award when the amount is "so high as to shock the judicial conscience and constitute a denial of justice." . . . .

. . .

The Supreme Court [has] erected three guideposts that should assist us in the application of our standard, by which we deem excessive a punitive damage award that "shocks our judicial conscience," *Hughes*, 850 F.2d at 883. These guideposts include: (1) the degree of reprehensibility of the tortious conduct; (2) the ratio of punitive damages to compensatory damages; and (3) the difference between this remedy and the civil penalties authorized or imposed in comparable cases. *Gore*, [517 U.S. at 575]. . . .

*Lee*, 101 F.3d at 808-09 (citations omitted) – *Payne*, *supra*, continues to counsel district courts to apply the *Gore* factors.  Each of the "guideposts" identified in *Gore* support upholding the jury's award of punitive damages in this case.

### 1.   Reprehensibility.

"Reprehensibility," as the Supreme Court has recognized, is often the critical factor in weighing a punitive damages award.  *Gore*, 517 U.S. at 575.  One of the *Gore* factors to be considered in evaluating reprehensibility is whether the conduct involved "violence or *the threat of violence*," *Gore*, 517 U.S. at 576 (emphasis added).   While Ohr's utterly unnecessary (and excessive) use of force was not the most violent use of force, Judge Jacobs' observations in *Lee* are worth noting:

As a police officer, Edwards exercised an authority backed by the weight and force of state power.  His decision to charge Lee falsely was implemented merely by an entry on a form, but that act nevertheless had the power to set into motion the coercive apparatus of the state, which is ultimately rooted in a willingness to use force. *Cf. Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 392 . . . (1971) (Agent using official authority "possesses a far greater capacity for harm" than a private individual; "mere invocation of

-12-

> federal power by a federal law enforcement official" normally renders attempts to resist futile). In Lee's case, this threat of force was attenuated and short-lived, but a jury could properly recognize it, and conclude that malicious prosecution by a police officer is egregious and reprehensible.

*Lee*, 101 F.3d at 810.

The "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *U.S. v. U.S. District Court*, 407 U.S. 297, 313 (1972). As the Supreme Court made clear, "[i]n none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home – a zone that finds its roots in clear and specific constitutional terms: 'The right of the people to be secure in their . . . Houses . . . shall not be violated.'" *Payton v. New York*, 445 U.S. 573, 589 (1980). Like the defendant in *Lee*, Ohr used the weight and force of state power to violate the sanctity of Mrs. Knight's home, and used a substantial amount of force in accomplishing that goal.

### 2. The Ratio of Punitive Damages to Compensatory Damages.

In order to determine if there is a permissible ratio of punitive damages to compensatory damages, "the proper inquiry is whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that actually occurred." *Gore*, 517 U.S. at 581 (quotation marks and citations omitted). Understandably, the Village defendants make no argument on this issue presumably because the ratio of punitive to compensatory damages is 1:1.

### 3. Comparable Civil or Criminal Penalties.

Finally, district courts may compare punitive damages awards to civil or criminal penalties for similar conduct, to insure that defendants had adequate notice of the severity with which society views their actions. *Gore*, 517 U.S. at 583-84. Again, the Village defendants present no argument.

-13-

"Though *Gore* initially described the third guidepost with reference to 'civil' penalties, its discussion of this guidepost makes clear that the relevant comparison is with both 'civil and criminal penalties,'" *Mathie v. Fries*, 121 F.3d 808, 816 (2d Cir. 1997) (citations omitted).

If prosecuted criminally, Ohr's conduct would constitute Criminal Trespass in the Second Degree (N.Y. Penal Law § 140.15), and Assault (N.Y. Penal Law § 120.00), which are Class A Misdemeanors. A jury could find that his conduct also constituted a violation of 18 U.S.C. § 242. Under both federal and New York State law, Ohr would face a maximum term of imprisonment of one year. *Id.*; N.Y. Penal Law § 70.15(1). *See Lee*, 101 F.3d at 811 (referring to State law penalties, "the civil and criminal penalties understate the notice, because the misconduct at issue was committed by a police officer").

**POINT IV**

**READO AND OHR ARE NOT ENTITLED TO QUALIFIED
IMMUNITY AS THEY VIOLATED THE MOST BASIC OF
WELL-ESTABLISHED CONSTITUTIONAL RIGHTS**

According to Ohr and Reado, they are entitled to qualified immunity because "Plaintiffs did not have a clearly established constitutional right to have the Officers withdraw and leave their premises in the midst of a police operation that became tense, unpredictable and dangerous." Defs. Memo at 24. Ohr also claims an entitlement to qualified immunity on Mr. and Mrs. Knight's excessive force claims because "the Knights did not have clearly established constitutional rights to remain in the room under the circumstances, as described by Officer Ohr and every singly other Party to this case." Defs. Memo at 24. This Court should reject these arguments because they are unpreserved, and fail to view the evidence in a light most favorable the Knights.

A.    <u>**The Village Defendants Did Not Preserve Their Argument**</u>.

In moving pursuant to Fed. R. Civ. Proc. 50(a), the Village Defendants only argued, as it

relates to their Rule 50(b) motion, that "plaintiffs' complaint [should be dismissed] in its entirety

on the grounds of qualified immunity, that based upon the evidence that was elicited during the trial

of the action of the Hempstead Police Officers were objectively reasonable under the

circumstances." (Tr. 1017.)    Once again, the County defendants have not preserved their argument.

In *Zellner v. Summerlin*, 494 F.3d 344 (2d Cir. 2007), the Second Circuit made clear that a

defendant must establish his or her entitlement to qualified immunity:

> [B]ecause qualified immunity is an affirmative defense, it is
> incumbent upon the defendant to plead, and adequately develop, a
> qualified immunity defense during pretrial proceedings so that the
> trial court can determine . . . which facts material to the qualified
> immunity defense must be presented to the jury to determine its
> applicability once the case has gone to trial. . . .  To the extent that a
> particular finding of fact is essential to a determination by the court
> that the defendant is entitled to qualified immunity, it is the
> responsibility of the defendant to request that the jury be asked the
> pertinent question. . . .  If the defendant does not make such a request,
> he is not entitled to have the court, in lieu of the jury, make the
> needed factual finding.

*Id.* at 368 (citations and quotations omitted).  Simply stating in conclusory fashion that a party is

entitled to qualified immunity, as the County defendants did at trial, is inadequate to satisfy Rule

50(a)'s specificity requirement.  *McCardle*, 131 F.3d at 52.

*McCardle* addressed a virtually identical argument as the County defendants present here:

"following the close of the defense case, Haddad's counsel made what he called a 'motion for

judgment of acquittal' (Tr. 158), and proceeded to argue that 'on the issue of illegal stop here, that

the evidence compels a ruling for the Defendant either on the actual case or on the issue of qualified

immunity, which is ultimately to be decided by the Court unless there are disputed issues to be

resolved by the jury.'" *Id.* at 52. In finding that defendant had waived his right to seek qualified immunity, the *McCardle* Court held in language applicable here, "[a]lthough Haddad moved after trial for JMOL dismissing McCardle's claim of unlawful search and briefly mentioned qualified immunity as one ground for that relief, that motion was improper to the extent that it sought to invoke qualified immunity because no motion for JMOL on that basis had been directed to the claim of unlawful search at trial. Accordingly, Haddad's defense of qualified immunity with respect to the claim of unlawful search had plainly been waived. *McCardle*, 131 F.3d at 52. *See also Blissett v. Coughlin*, 66 F.3d 531, 539 (2d Cir. 1995) ("Appellants never articulated a qualified immunity defense distinct from their contention — the heart of their defense throughout these proceedings — that no constitutional violation occurred. . . . We find no error in the district court's ruling that the qualified immunity defense had been waived.")

In advancing their qualified immunity arguments, the Village defendants draw upon their testimony, and those of the County defendants, to create a chaotic scene inside of 221 Amherst St. However, they made no such arguments as part of their Rule 50(a) motion. If Ohr and Reado thought these facts, or others, were relevant to this Court's qualified immunity analysis, they were required to have the jury answer these questions through the use of special interrogatories. *Zellner*, 474 F.3d at 368; *Rucks v. City of New York*, 96 F. Supp.3d 138, 151 n. 5 (S.D.N.Y. 2015) (same). Of course, it necessarily follows that the jury rejected the very facts Ohr and Reado rely upon given the jury's verdict in favor of Greenaway. Accordingly, this Court should hold that they have waived their right to qualified immunity.

The Village defendants' motion also fails on the merits. Qualified immunity is intended to ensure that before an official is subjected to a lawsuit, that the official is on notice that the alleged conduct is unlawful. *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002). Thus, if the law is "clearly

-16-

established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982); *accord Kerman v. City of New York*, 261 F.3d 229, 237 (2d Cir. 2001) (qualified immunity should be denied "where it is sufficiently clear that a reasonable official would understand that what he is doing violates the law"). Here, it was clearly established as of April 25, 2010, that the Knights and Greenaway could order the defendants out of their home, and that they had the right to be free from the use of excessive force.

The "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *U.S. v. U.S. District Court*, 407 U.S. 297, 313 (1972). As the Supreme Court has made clear, "[i]n none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home – a zone that finds its roots in clear and specific constitutional terms: 'The right of the people to be secure in their . . . Houses . . . shall not be violated.'" *Payton v. New York*, 445 U.S. 573, 589 (1980). *See Nimkoff v. Dollhausen*, 751 F. Supp. 2d 455, 465-66 (E.D.N.Y 2010) (denying defendants' motion for summary judgment where a view of the evidence established that the plaintiff had withdrawn his consent to the officers' continued presence in the home, and exigent circumstances were lacking).

Defendants claim that "Plaintiffs did not have a clearly established constitutional right to have hte Officers withdraw and leave their premises in the midst of a police operation that became tense, unpredictable and dangerous." Defs. Memo at 24. Their argument fails not only because it is unpreserved, but because it is based on the faulty premise about the state of affairs inside of 221 Amherst St. In fact, Reado testified that as soon as ESU (the County defendants) entered the room, the Knights and Greenaway became emphatic that they wanted the officers to leave the house. (Tr. 173-75, 182). While Ohr and Reado now claim that the scene was chaotic inside of 221 Amherst

-17-

St., Reado testified that for upwards of 40 minutes Greenaway was not a danger to himself or others

(Tr. 176), that for 15 minutes after ESU arrived the Knights and Greenaway were telling all the

officers to leave, and that ESU had not drawn any weapons during this 15 minute period. (Tr. 182.)

For these reasons, the jury could readily conclude that Ohr and Reado disregarded repeated requests

to leave the home well before Hudson first deployed his taser, and when no basis existed to seize

Greenaway.

Regarding the excessive force claims, Ohr and Reado contend that "the Knights did not have

clearly established constitutional rights to remain in the room under the circumstances, **as described**

**by Officer Ohr and every single other Party to this case.**" Defs. Memo at 24 (emphasis

supplied). The Court well knows that Greenaway's testimony did not describe the chaotic situation

Ohr and Reado now depict. And, as detailed immediately above, Reado did not even paint such a

picture. Accordingly, Ohr's and Reado's arguments fail for the same reason as the right to be free

from gratuitous, excessive force was clearly established as of April 25, 2010. *See Maxwell v. City*

*of New York*, 380 F.3d 106, 108 (2d Cir.2004)("[W]e have permitted a plaintiff's claim to survive

summary judgment on allegations that, during the course of an arrest, a police officer twisted her

arm, 'yanked' her, and threw her up against a car, causing only bruising." (citing *Robison v. Via*, 821

F.2d 913, 924–25 (2d Cir.1987)).

## CONCLUSION

For the foregoing reasons, defendants' motions should be denied except as otherwise noted,

together with such other and further relief as is just and proper.

Dated: New York, New York
　　　　August 14, 2017

　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　LAW OFFICES OF
　　　　　　　　　　　　　　　　FREDERICK K. BREWINGTON

By:　*/S/ Frederick K. Brewington*
　　　FREDERICK K. BREWINGTON
　　　*Attorneys for Plaintiffs*
　　　556 Peninsula Blvd.
　　　Hempstead, NY 11550
　　　(516) 489-6959


　　　　　　　　　　　　　　　　SCOTT A. KORENBAUM, ESQ.

By:　*/S/ Scott A. Korenbaum*
　　　SCOTT A. KORENBAUM
　　　*Attorneys for Plaintiff*
　　　11 Park Place, Suite 914
　　　New York, NY 10007
　　　(212) 587-0018